## Commonwealth *v.* Lehman, Appellant.

Argued September 26, 1932.   Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Charles D. McAvoy,* with him *Edward F. Kane,* for appellant.—A special prosecutor may be appointed only

for cause; and such cause must be authorized by the statute.

While a district attorney retains his office he should not be deprived of the right to appear in court as such and represent the Commonwealth: Snyder's Case, 301 Pa. 276.

Section 907 of the Act of 1929 is unconstitutional in that notice of it is not given in the statute: Potter Co. Water Co. v. Austin Boro., 206 Pa. 297; Com. v. Hazen, 207 Pa. 52; Dorsey's App., 72 Pa. 193.

The statute contains more than one subject and is void: Com. v. Dickinson, 1 W. N. C. 185; Perkins v. Phila., 156 Pa. 554.

The declarations of Spanish were not properly admissible as dying declarations: Kilpatrick v. Com., 30 Pa. 198.

The declarations of Spanish were not properly admissible as part of the res gestæ: Com. v. Werntz, 161 Pa. 591; Kane v. Com., 109 Pa. 541; Hanover R. R. v. Coyle, 55 Pa. 396; Smith v. Stoner, 243 Pa. 57.

The Commonwealth ought not to have been permitted to put in rebuttal evidence which it deliberately omitted from its case in chief: Stetson v. Croskey, 52 Pa. 230; Richardson v. Stewart, 4 Binn. 198.

It was error to permit the Commonwealth to question its own witness as to prior contradictory statements without offer of proof of such other statements: Farmers' Mutual Ins. Co. v. Bair, 87 Pa. 124; Com. v. Delfino, 259 Pa. 272.

Defendant's point for charge on intoxication, refused by the trial judge, was taken almost verbatim from Com. v. Hart, 2 Brewster 546.

A charge, especially in a criminal prosecution, should be a calm and dispassionate summation of the evidence. A charge which does not conform to these requirements is error: Linn v. Com., 96 Pa. 285; Com. v. Meads, 29 Pa. Superior Ct. 321.

*Samuel H. High,* Special Prosecutor appointed by the attorney general, for appellee.—A defendant who has made no prior objection thereto may not after a verdict complain of the appointment of a special prosecutor.

Section 907 of the Act of 1929 is constitutional: Snyder's Case, 301 Pa. 288; Com. v. Havrilla, 38 Pa. Superior Ct. 292.

The statements made by Spanish were admissible as part of the res gestæ: Com. v. Gardner, 282 Pa. 458; Smith v. Stoner, 243 Pa. 58.

The declarations made in the hospital were admissible as dying declarations: Com. v. De Leo, 242 Pa. 510; Com. v. Puntario, 271 Pa. 501.

The charge of the court on intoxication was correct: Com. v. Detweiler, 229 Pa. 304; Com. v. Eyler, 217 Pa. 512; Com. v. Walker, 283 Pa. 469.

The charge of the court was not unfair: Com. v. Parker, 294 Pa. 144.

OPINION BY MR. JUSTICE LINN, November 28, 1932:

The first subject of complaint is that the court erred "in requesting the attorney general to appoint a special prosecutor to conduct the prosecution," and in permitting the appointee to "try the indictment against the appellant as counsel for the Commonwealth, because the request and appointment were not authorized by section 907 of the Act of April 9, 1929, article IX, P. L. 177, 239," 71 PS, page 108, section 297.

The point is without merit, if we assume, without deciding, that it may be made by defendant. We note, first, that appellant made no objection until after verdict; second, that the superseded district attorney made none. Section 907 provides: "Special Attorneys in Criminal Cases.—When the president judge, in the district having jurisdiction of any criminal proceedings before any court of oyer and terminer, general jail delivery, or quarter sessions, in this Commonwealth, shall request the attorney general to do so, in writing, setting

forth that, in his judgment, the case is a proper one for the Commonwealth's intervention, the attorney general is hereby authorized and empowered to retain and employ a special attorney or attorneys, as he may deem necessary, properly to represent the Commonwealth in such proceedings, and to investigate, charge, and prosecute the alleged offenders against the law. Any attorney, so retained and employed, shall supersede the district attorney of the county in which case or cases may arise, and shall investigate, prepare, and bring to trial the case or cases to which he may be assigned. He shall take the oath of office required by law to be taken by district attorneys, and shall be clothed with all the powers and subject to all the liabilities imposed upon them by law."

That provision is the last of several statutes regulating the temporary displacement of the district attorney, beginning with the Act of March 12, 1866, P. L. 85, 16 PS, section 3432, and including the Act of May 2, 1905, P. L. 351, 71 PS, section 817 et seq. and the Act of June 7, 1923, article IX, P. L. 498, 550. Appellant says that "a district attorney is a constitutional officer, made so by section 1 of article XII of the Constitution of Pennsylvania which specifies who shall be considered county officers," and that by section 2 "All county officers shall be elected at the general elections and shall hold office until their successors are duly elected and qualified, but all vacancies in that office shall be filled as provided by law, that is by section 3 of the Act of May 3, 1850, P. L. 654, 16 PS, section 1692, by the judges of the court of common pleas of the county." It is accordingly contended that there was no vacancy in the office, and that the district attorney was neither incapacitated nor disqualified to act. If we should take judicial notice that the office was not vacant, we should still be without evidence that the district attorney was neither incapacitated nor disqualified. As the Constitution does not prescribe the duties of the district attorney, it has been held

that the legislature may regulate the performance of the duties of the office and provide for cases in which it would be improper for the elected officer to act: Com. v. McHale, 97 Pa. 397; Com. v. Havrilla, 38 Pa. Superior Ct. 292; see, also Snyder's Case, 301 Pa. 276, 152 A. 33. We gather from the briefs (the record contains nothing on the subject) that the president judge, pursuant to the statute, requested the attorney general to appoint an attorney to supersede the district attorney for the preparation and trial of this case, and that the learned counsel who appeared for the Commonwealth was accordingly appointed. There is no suggestion of abuse of discretion in the action of the court.

A second objection is that the title to the statute violates article III, section 3, of the Constitution, requiring that the subject of legislation "be clearly expressed in its title;" that "the subject-matter of that section, or at least the most important part of it, is not included in or germane to the title of that Code, and because the section contains three distinct subjects." The title to the Administrative Code is quoted in the margin.* The words in the title "defining the powers and duties of the governor and other executive and administrative officers and of the several administrative departments ......" clearly express the subject of the legislation; properly understood, it is but one subject, as we held in Com. ex rel. v. Snyder, 279 Pa. 234, 242, 123 A. 792. The attorney general is an executive officer: Constitution, article IV, section 1. Prior to the Act of May 3, 1850,

---

* "An act providing for and reorganizing the conduct of the executive and administrative work of the Commonwealth by the executive department thereof and the administrative departments, boards, commissions, and officers thereof, including the boards of trustees of state normal schools, or teachers colleges; abolishing, creating, reorganizing or authorizing the reorganization of certain administrative departments, boards, and commissions; defining the powers and duties of the governor and other executive and administrative officers, and of the several administrative departments, boards, commissions and officers," etc.

P. L. 654, 16 PS, section 1691, the attorney general was represented in each county by his deputy who conducted criminal prosecutions; by that statute the office of district attorney was created and that officer was charged with the performance of the duties theretofore performed by the deputy attorney general. Thereafter the prosecutor was elected instead of appointed, but the power of general supervision vested in the attorney general over the performance of a district attorney's duties in the county was not taken away; that power remained, and it is matter of general information that the power has been exercised from time to time when necessary. In part, this supervision is now regulated by section 907 of the Administrative Code. Consideration of the historic development in this Commonwealth of the office of attorney general and the office of district attorney at once distinguishes the cases cited by appellant from other states said to hold that the legislature may not provide for temporarily displacing prosecuting attorneys.

The third objection is that the special prosecuting attorney was not sworn according to law. For present purposes, it is sufficient to say that the record shows that he took the oath in proper form in open court and that it was duly filed in the office of the prothonotary: Section 2, Act of May 3, 1850, P. L. 654; section 1, article VII, Constitution; section 53, article III of the Act of May 2, 1929, P. L. 1278, 1288, 16 PS, section 53.

Consideration of the remaining complaints requires some statement of the facts and circumstances incident to the murder, and we shall state them as the jury may have found them from the evidence, for so they must be considered in disposing of this appeal: Com. v. Diaco, 268 Pa. 305, 306, 111 A. 879; Com. v. Carelli, 281 Pa. 602, 605, 127 A. 305.

At about ten o'clock on Sunday evening, October 11, 1931, Ralph Spanish, a gambler, was shot by appellant on a sidewalk in Conshohocken, and was immediately taken to Bryn Mawr Hospital where he died about five

minutes after midnight. The appellant and three others were indicted for murder and also for conspiracy to murder. One of them, Michael Gilida, alias Michael Gallagher, was tried and convicted of murder in the second degree (see Com. v. Gilida, alias Gallagher, 309 Pa. 501, the following case). Another, George Steiner, pleaded guilty to murder in the second degree; the fourth, James DiYenno, pleaded guilty to the indictment charging conspiracy. Appellant and Steiner were gamblers, operating gambling establishments, and employed Gilida and DiYenno in that occupation. One of their gambling places was in Devon and the other in Conshohocken. On Saturday night October 10th, two slot machines, containing a small sum of money, were stolen from their gambling room in Conshohocken. Suspecting Spanish, who was interested in what may be considered a rival gambling place in Conshohocken, of the theft, appellant and the other three went in pursuit of him on Sunday evening, driving from Devon, where appellant lived, to Conshohocken where Spanish lived. Shortly after nine o'clock, on the sidewalk in front of Spanish's gambling place, appellant met one Rossi, alias Fox; asked where Spanish was, and stated that he was "looking for him, because they [Spanish and Harvey] stole our slot machines last night, and I am going to get them." "If Spanish gets here I will kill him." Appellant drew his revolver and pointed it at Fox and detained him for perhaps twenty minutes. Steiner and Gilida assisted in detaining Fox, one standing on each side of him, fearing that he might warn Spanish of their purpose. A number of persons saw this occurrence and testified at the trial. Appellant finally permitted Fox to leave, in custody of Fox's brother, saying to him "Be sure to take him right home." Appellant remained with Gallagher and Steiner, waiting for Spanish, who, Fox said, would soon arrive. Shortly before ten o'clock Spanish came by automobile. He walked toward the entrance of the gambling establishment and, at the same time, toward ap-

pellant who was on the sidewalk. Appellant imme-diately went toward Spanish and from a place within two feet of him, fatally shot him in the abdomen. Spanish turned and fled toward his car while appellant fired a second shot at him at a distance of about twelve feet. Appellant, Steiner and Gilida then got into their automobile and fled, Spanish, mortally wounded, collapsed as he reached his car. He was placed in another car, and rushed to a near-by physician, standing on the sidewalk, who ordered him to the hospital in an ambulance then appearing. He arrived at the hospital at about ten-thirty. The defense was that appellant was intoxicated to such extent.that he was not responsible.

Though there was abundance of evidence sufficient to justify and quite certainly to convince the jury that appellant was guilty of murder in the first degree, the Commonwealth, in addition, offered evidence, as part of the res gestæ, of a statement made by Spanish on the way to the hospital, and of several statements made in the hospital, as dying declarations. These statements were received against objection and exception, and their admission in evidence is now assigned for error. In the ambulance with Spanish were two persons who were called by the Commonwealth as witnesses, one being Fox, already mentioned. On the way and perhaps ten minutes after the shooting, Spanish, described as moaning in great pain, apparently recovered consciousness and asked Fox to open his collar and to take his money and wrist watch; Fox, then (in the words of a witness) "asked him who did it and Ralph [Spanish] said 'Jake' [appellant]." Fox said that "he seemed to be unconscious until he [Spanish] first spoke." In the circumstances, the accusation is admissible, within the res gestæ rule, as having been made so soon after the shooting as to be part of the general event and, also to exclude any presumption that the statement resulted from premeditation or design. The application of the rule involves the wise exercise of judicial discretion in determining

whether a challenged expression is in fact part of the transaction, and therefore admissible, or is a narrative of past events made after the transaction may be said to be fully ended, and therefore inadmissible. On this record we cannot say that the court erred to the prejudice of appellant in view of the other evidence in the case: See Com. v. Werntz, 161 Pa. 591, 597, 29 A. 272; Smith v. Stoner, 243 Pa. 59, 63, 89 A. 795; Com. v. Gardner, 282 Pa. 458, 465, 128 A. 87; Com. v. Puntario, 271 Pa. 501, 506, 115 A. 831; Com. v. Stallone, 281 Pa. 41, 46, 126 A. 56. Nor can we accept appellant's contention that the dying declarations made in the hospital were improperly received. We shall refer to one only, as they are all in the same class. There is evidence that Spanish was conscious and believed that death was near. Indeed, he said "I am not a gangster, but I am dying a gangster's death." He said to a friend, Cardamone, "Big Jake [appellant] shot me for nothing." See Com. v. Puntario, 271 Pa. 501, 504 et seq.; Com. v. De Leo, 242 Pa. 510, 516, 89 A. 584. As to the complaint now made that the jury was not instructed "what are to be considered as dying declarations and as to the weight to be given to such declaration," it is sufficient to say that no requests for such instructions were presented.

A number of other rulings made during the examination of witnesses are assigned for error; none requires discussion, though we shall refer to several. In direct examination appellant stated that he had kept a revolver in his car for about a year and a half for purposes of protection, because, he said, "I carried money, quite a bit of money and in case any body would steal it." He was then asked, "What, if anything, happened to you at the time that caused you to put a revolver in your car?" Refusal to permit him to answer the question is complained of. The jury had the benefit of what he said was his purpose in keeping a revolver in the car. No offer of proof was made to enable the court to judge whether what happened a year and a half before, if any-

thing then happened, had any relevance to the issue on trial. Several witnesses were asked whether they had "ever known [appellant] to carry a revolver on his person," but objections to the questions were sustained. The purpose of the questions, stated by appellant's counsel, was "to show that this defendant never carried a gun upon his person in his life," for the purpose of contending later that defendant was not a "gangster." It does not appear that the witnesses had the necessary opportunities to acquire knowledge on the subject; there is nothing to supply the court with this information of their qualifications, required preliminary to admitting such evidence; while want of knowledge of things open to the senses, in persons with opportunity of knowing such fact if it existed, may be slight evidence of the nonexistence of the fact, the opportunity of knowing must first appear: Cf. Wigmore, Evidence, volume 1, section 664.

Considerable argument is devoted to assignments that the court erred in receiving evidence in rebuttal. The objection made at the trial in the instance most stressed, was that "it was part of the Commonwealth's case in chief and if they did not see fit to introduce it at that time, they cannot introduce it now." While generally the order of the proof is discretionary (Com. v. Carelli, 281 Pa. 602, 607; Com. v. Bell, 166 Pa. 405, 413, 31 A. 123), in Finlay v. Stewart, 56 Pa. 183, 192, we stated that "it may be said that if the evidence offered was admissible at any stage of the trial, the fact that it was offered and received in rebuttal when it should have been offered in chief is not assignable in error: Quinn v. Crowell, 4 Wharton 334; Wilson v. Jamieson, 7 Barr 126."

The complaint that the Commonwealth was improperly allowed to cross-examine its witness, Nugent, is also without support. In the circumstances disclosed by the record, the learned trial judge wisely exercised the discretion vested in him, in permitting the cross-ex-

amination of the witness who, quite obviously, gave the prosecuting officer one story before trial and attempted to give another on the stand: Com. v. Deitrick, 221 Pa. 7, 15 et seq., 70 A. 275; Com. v. Delfino, 259 Pa. 272, 277, 102 A. 949.

The complaints of error in the instructions to the jury involve the refusal of three out of eight points for charge, and several extracts from the charge. When we consider them in their relation to the evidence, and to other parts of the charge on the same subject-matter, we are required to overrule them. We first note that though the defense was voluntary intoxication rendering appellant incapable of knowing what he was doing, there was abundant evidence to sustain a finding by the jury that there was no foundation for this defense. Appellant's position appears in the following point, and also in the following extract from the charge. "If you find from the weight of the testimony, that by reason of intoxication the defendant's reason was so destroyed that he had not the power to distinguish right from wrong, or the power to adhere to the right and abstain from the wrong, he is not accountable to the criminal laws, and if this unfortunate condition existed and was produced by intoxicating liquor, it is of course as available for a defense as if it were the result of a mental disease.

"Refused. There is no evidence and there has been no contention that the defendant was deranged in mind, permanently or continuously, or in other words, was insane."

From the charge the following is complained of:

"In this case the defense is intoxication—an allegation that, by the voluntary consumption of alcoholic liquors, the prisoner rendered himself incapable, temporarily, of deliberating, premeditating and forming a conscious purpose to kill. The only issue for your determination is, therefore, the degree of his guilt of murder.

. . . . . . . . . . .

"The mere drunkenness of the defendant will not, then excuse or palliate his offense, unless he was in such a state of intoxication as to be incapable of conceiving any intent to kill. If he was, the grade of his offense is reduced to murder of the second degree.

"Should you find the defendant was intoxicated at the time of the killing and his intoxication was so great as to render it impossible for him to form the intent to take the life of Ralph Spanish, your verdict should be guilty of murder of the second degree."

Such instructions, as applied to this record, and considered with the rest of the charge, are supported by the decisions of this court: Com. v. Eyler, 217 Pa. 512, 514, 66 A. 746; Com. v. Detweiler, 229 Pa. 304, 308, 78 A. 271; in Com. v. Walker, 283 Pa. 469, 474, 129 A. 453, we repeated what was said in the earlier decisions: "The law as settled in our State is that the mere intoxication of the defendant will not excuse or palliate his offense, unless he was in such a state of intoxication as to be incapable of conceiving any intent. If he was, his grade of offense is reduced to murder in the second degree." The other two points for charge, which were refused, requested binding instructions as to facts seriously controverted in the evidence; they were properly refused.

Objection is also made to portions of the charge in which the jury was instructed concerning its duty to fix the penalty as provided by the Act of 1925. Among other things the learned trial judge said to the jury: "If you find the homicide an atrocious one and the defendant a gambler, a gangster and a gunman, these are facts you should take into consideration in a sound and wholesome exercise of your discretion. If you so find, it may seem obvious to you that the commission of crimes of this nature should be stopped and that repetition can be prevented best by a firm and courageous fixation of the maximum penalty.

" 'The Act of 1925 was not passed to help habitual criminals. Unfortunately, offenders of that designation

have become altogether too general. That society may be protected properly from them, the administration of criminal justice must advance.'

. . . . . . . . . . .

"If you find that Ralph Spanish, although not a gangster, through no fault whatever of his own, died the death of a gangster at the hands of the defendant, it is for you to say whether, in the light of all the established circumstances and in the just exercise of your discretion Jacob Lehman, alias Jake Lehman, the prisoner at the bar, ought not to die the death of a murderer of the first degree."

The complaint, in the words of the learned counsel for the appellant, is that the extract quoted "was more in the nature of an address by an advocate for the prosecution." While it is the duty of a trial judge to instruct the jury impartially, calmly and dispassionately, we are not prepared to say, in the light of the evidence, that the instruction was unfair. The jury was left free to make the findings or not as it saw fit, and to affix either penalty permitted by the statute. Defendant admitted that he was not only a gambler and had been for more than three years, but that he was proprietor of two gambling places, one in Devon where he lived, and one in Conshohocken where Spanish lived and had his place. Associated with appellant in the same occupation were Steiner and Gilida, alias Gallagher, and DiYenno. It is not a misuse of the word "gang" to apply it to men associated as these were, and who were out together for the purpose, as the jury found, of murdering Spanish; nor is it a misuse of the word "gangster" to apply it to any one of them. They were habitual gamblers, i. e., men who, by their own testimony, had for some time engaged in gambling. The evidence about the revolver was quite sufficient to justify the jury in finding that appellant was a "gunman." In Com. v. Parker, 294 Pa. 144, 154, 143 A. 904, this court said: "The Act of 1925 was not passed to help habitual criminals, and we take judicial knowledge of

the fact that offenders of that designation have become so general that the law, not only lex scripta but non scripta, must advance to protect society against them." See also Com. v. Curry, 287 Pa. 553, 558, 135 A. 316.

The extracts from the charge alleged to be erroneous instructions concerning the weight to be given to evidence of general reputation and concerning the relation of deliberation, premeditation and intent to kill, with the act of killing, when read with all that is said on those subjects in the charge, cannot be considered reversible: Com. v. Webb, 252 Pa. 187, 196, 97 A. 189; Com. v. Reed, 234 Pa. 573, 576, 83 A. 601.

We have considered all the assignments of error in the light of the exhaustive argument presented on appellant's behalf, and after careful study of the record as required by the statute, are of opinion that all the elements of murder in the first degree appear, and that the record is free from error that in any view could be considered harmful.

The judgment is affirmed, and the record is remitted for purposes of execution according to law.