383 A.2d 819

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Martin I. SCHAB, Appellee.**

Supreme Court of Pennsylvania.

Argued April 2, 1976.

Decided Jan. 31, 1978.

Robert P. Kane, Atty. Gen., Peter B. Foster, Vincent X. Yakowicz, Sols. Gen., for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Abraham J. Gafni, Deputy Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Division, for appellee.

Liebert, Short, Fitzpatrick & Lavin, Stephen J. McEwen, Jr., Upper Darby, for Pennsylvania Dist. Attorneys Association.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

MANDERINO, Justice.

This case raises the issue of if and under what circumstances the Attorney General of Pennsylvania may supersede a district attorney and proceed to conduct a criminal prosecution in the county of the superseded district attorney.

On August 31, 1975, Martin I. Schab, a Philadelphia policeman, shot and killed Anthony Frank Majewski in the Sip'N Steak Bar and Restaurant in Philadelphia. The District Attorney's office investigated the killing and concluded that Schab had not violated the penal law because the killing was an excusable homicide.

Subsequently, the Attorney General's office conducted its own investigation. The facts uncovered by this investigation, in which the District Attorney cooperated, were substantially the same as those uncovered by the District Attorney's office. Nevertheless, the Attorney General decided that Schab should be prosecuted. The Attorney General then submitted a request to the Honorable Edward J. Bradley, President Judge of the Court of Common Pleas of Philadelphia County, seeking a written request from Judge Bradley asking the Attorney General to intervene pursuant to Section 907 of the Administrative Code, Act of April 9, 1929, P.L. 177, art. IX, § 907, 71 P.S. § 297. Judge Bradley refused.

The Attorney General then informed the District Attorney that he was superseding him for the purpose of prosecuting Martin I. Schab pursuant to Section 904 of the Administrative Code, 71 P.S. § 294.

Schab was arrested on the same day and a preliminary hearing was scheduled before Judge Cavanaugh on December 31, 1975. Judge Cavanaugh was informed that the District Attorney was contesting the Attorney General's right to conduct the prosecution and he ordered both parties to appear before him on December 31, 1975 to present arguments and briefs on the issue. In an opinion and order dated January 14, 1976, Judge Cavanaugh ruled that the

Attorney General could not supersede the District Attorney in this instance and that the district attorney had control of the prosecution. On January 16, 1976, Judge Cavanaugh discharged Schab after being informed that the District Attorney would present no evidence at the preliminary hearing. The Attorney General then asked this Court to assume jurisdiction of the matter. On January 23, 1976, the Court entered an order accepting jurisdiction and tolling the 180-day provision of Pa.R.Crim.P. 1100.

In this appeal, the Attorney General contends that he has both the common law and statutory power to supersede the District Attorney. He further contends that the only question at issue once he exercises this power is whether or not he [the Attorney General] abused his discretion. In essence, the Attorney General's contention is that he may supersede the District Attorney in the conduct of a criminal investigation or criminal prosecution at any time so long as his act is not an abuse of discretion.

We turn first to the Attorney General's contention that he has the common law power to supersede the District Attorney. This contention finds strong support in a series of Pennsylvania cases. In *Commonwealth ex rel. Minerd v. Margiotti*, 325 Pa. 17, 30, 188 A. 524, 531 (1936), this Court stated:

> "We conclude from the review of decided cases and historical and other authorities that the Attorney General of Pennsylvania is clothed with the powers and attributes which enveloped Attorneys General at common law, including the right to . . . *supersede and set aside the district attorney when in the attorney general's judgment such action may be necessary.*" (Emphasis added.)

This statement was repeated by the Court in *In Re Investigation by Dauphin County Grand Jury*, 332 Pa. 289, 2 A.2d 783 (1939), *Appeal of Margiotti*, 365 Pa. 330, 75 A.2d 465 (1950), *Matson v. Margiotti*, 371 Pa. 188, 88 A.2d 892 (1952) and *Commonwealth v. Fudeman*, 396 Pa. 236, 152 A.2d 428 (1959).

*Commonwealth ex rel. Minerd v. Margiotti,* as well as these latter decisions which adopted its reasoning, were based on the premise that such power "enveloped" an attorney general at common law and the Attorney General of this Commonwealth was clothed with the same power. As this Court has recognized, this reasoning has been severely criticized, and Pennsylvania seems to be the only jurisdiction which has approved the supersession of a District Attorney based on an Attorney General's common law powers. *See Packel v. Mirachi,* 458 Pa. 602, 327 A.2d 53 (1974).

We find the reasoning in this line of decisions to be erroneous, and therefore they should not be controlling here. The Court in *Minerd* based its conclusion on an analysis of the powers of the King's Attorney in England, out of which evolved the modern office of the attorney general. The King's attorney, appointed by the Crown, was the chief law enforcement officer in England. He managed all of the Crown's legal affairs, including the prosecution of all suits, both criminal and civil, in which the Crown was interested. The King's Attorney also had the right to appoint deputies, over which he had complete control and could replace at any time. *See* 325 Pa. at 23–24, 188 A. at 527. The question as to the common law power of an Attorney General to supersede a District Attorney on his own motion never arose at common law for the simple reason that *elected* prosecuting officers were unknown to England's political institutions.

No analogy can rightly be drawn between that system, one of deputized attorneys general, and the system which has existed in Pennsylvania since the office of elective District Attorney was created by the Act of May 3, 1850, P.L. 654, § 1, 16 P.S. § 3431 (now 16 P.S. § 7701). The elected District Attorney was to perform the function of local prosecutor previously performed by the Deputy Attorney General. More specifically, the duties of the new office were defined as follows:

"The officer so elected shall sign all bills of indictment, and conduct in court all criminal and other prosecutions in the name of the Commonwealth . . . which arise in

the county for which he is elected, and perform all duties which now by law are to be performed by deputy attorney generals . . . ."

In 1874, the district attorney was made a constitutional officer. Pa.Const. Art. XIV, § 1 (1874), now in Pa.Const. Art. IX, § 4.

Despite the fundamental change in the method of selecting a local prosecutor, and despite the district attorney's status as a constitutional officer, our Court reasoned: Pennsylvania adopted the office of Attorney General as it existed in England; in the 18th Century England's Attorney General had the power to supersede prosecuting attorneys; therefore, Pennsylvania's Attorney General has the same power. *See, e. g., Commonwealth ex rel. Minerd v. Margiotti,* supra, 325 Pa. at 22–31, 188 A. at 526–30.

We no longer adhere to this view. Simply because the Attorney General had the common law power to replace his own deputies does not justify the conclusion that he now has the right to supersede an elected District Attorney, an officer unknown to the common law. It would be incongruous to place the district attorney in the position of being responsible to the electorate for the performance of his duties while actual control over his performance was, in effect, in the Attorney General. To countenance such a separation of accountability and control undermines self-government and promotes centralization, *see Commonwealth v. Fudeman,* 396 Pa. 236, 152 A.2d 428, 438–40 (1959) (Musmanno, J., dissenting), of law enforcement—precisely the approach rejected in Pennsylvania by statute in 1850 and constitutionally in 1874.

On the basis of the foregoing, it is our opinion that the Attorney General of Pennsylvania has no common law power to supersede at his discretion a District Attorney of this Commonwealth.

Having determined that the Attorney General has no common law powers to supersede, at his sole discretion, the office of district attorney, we turn to the relevant statutory provisions to determine if and under what circumstances the

Attorney General can supersede a district attorney's office. Our task is to reconcile and give effect to two sections of the Administrative Code, § 904 [71 P.S. § 294] and § 907 [71 P.S. § 297]. Section 904 provides in full:

"The Department of Justice shall have the power, and its duty shall be, with the approval of the Governor:

(a) To investigate any violations, or alleged violations, of the laws of the Commonwealth which may come to its notice;

(b) To take such steps, and adopt such means, as may be reasonably necessary to enforce the laws of the Commonwealth."

Section 907 provides in relevant part:

"When the president judge, in the district having jurisdiction of any criminal proceedings, before any court of oyer and terminer, general jail delivery, or quarter sessions, in this Commonwealth, shall request the Attorney General to do so, in writing, setting forth that, in his judgment, the case is a proper one for the Commonwealth's intervention, the Attorney General is hereby authorized and empowered to retain and employ a special attorney or attorneys, as he may deem necessary, properly to represent the Commonwealth in such proceedings, and to investigate charges, and prosecute the alleged offenders against the law. Any attorney, so retained and employed, shall supersede the district attorney of the county in which the case or cases may arise, and shall investigate, prepare, and bring to trial the case or cases to which he may be assigned."

In construing these two sections of the Administrative Code, we must do so in a manner that gives effect to both provisions, for we are to presume the Legislature intended the entire statute to be effective. 1 Pa.C.S.A. §§ 1921(a), 1922(2).

We note first that § 907 is the only provision in which the General Assembly gave the Attorney General the explicit authorization to supersede a district attorney. One possible reading of these two sections, therefore, is that § 907 deline-

ates the only method by which the Attorney General can ever supersede a district attorney. This interpretation arguably finds support in the Act of March 20, 1939, P.L. 8, where the General Assembly "repealed absolutely" the Act of July 30, 1938, P.L. 17, which had conferred on the Attorney General the power to supersede, at his discretion, the District Attorney of a county at any stage of an investigation or proceeding pending in that county's criminal courts. This action indicated, at the least, a legislative disapproval of a system in which the Attorney General could, at his pleasure, displace an elected official in the execution of his governmental responsibility. We could reasonably conclude that the Legislature believed that the elective process, as well as § 907's authorization of a president judge to intervene in appropriate cases, were sufficient checks on the office of District Attorney.

Another possible construction of §§ 904 and 907, one urged upon us by the Attorney General, is to hold § 907 is but one prescribed avenue of supersession, and the Attorney General can supersede a district attorney at will providing his decision to do so is not an abuse of discretion. Under this view, the appellant argues, the Attorney General's legislative mandate to enforce the laws of the Commonwealth includes the power to supersede a district attorney despite the seeming limitation of § 907.

We reject both of these constructions. In our view, neither represents a proper accommodation of the two statutory provisions or the important interests they attempt to promote. Section 907, the only section which expressly authorizes supersession, speaks to the limited situation of a president judge requesting that the attorney general become involved in a proper case in a prosecutorial matter. We reject the position that § 907 represents the only instance in which the Attorney General can ever supersede a District Attorney. That construction would give insufficient consideration to § 904, which empowers the Attorney General "to take such steps, and adopt such means, as may be reasonably necessary to enforce the laws of the Commonwealth." If a

situation arose where the Attorney General was warranted in believing that superseding a district attorney was a necessary means of enforcing those laws, he would be helpless if supersession could only be initiated by the president judge and not by the Attorney General.

On the other hand, we reject the notion that § 907 in no way limits an Attorney General who desires to supersede a District Attorney. In drafting § 907, our Legislature enacted a scheme whereby a member of the judicial branch could act as a check on an elected District Attorney who could not or would not carry out his prosecutorial responsibilities. Once a president judge requested the Attorney General to involve his offices in a criminal matter, only then was his power *plenary*. We believe that § 907 evidences a legislative belief that the Attorney General's entry into local law enforcement should be exercised with circumspection, and that § 907 negates the Attorney General's argument that with the narrow exception of an abuse of discretion, his power to supersede a district attorney is untrammelled.

Although § 907 provides that a president judge may initiate a request that the Attorney General supersede a District Attorney, legislation is silent on the procedure that the Attorney General must use if the Attorney General desires to initiate action in order to perform his duties under § 904. We believe that § 904 and § 907 can be properly accommodated by holding that if the Attorney General initiates action under § 904, he must do so by presenting a petition to the president judge. Because of § 904, we cannot deny to the Attorney General the right to initiate action. Because of § 907, we cannot allow the Attorney General to initiate action before a judge other than the president judge. The president judge's decision, in any event, would be a final judgment subject to appellate review.

Requiring the president judge's authorization, whether action is initiated by the president judge or by the Attorney General's petition, is the only means of giving proper deference to the legislative intent of § 907. Although there is no evidence of "judge shopping" in this case, our holding pre-

vents that possibility whereby the Attorney General could possibly circumvent and undermine the authority of the president judge contained in § 907. Since the president judge's determination on the issue of supersession is subject to appellate review, proper effect is given to the Attorney General's obligation under § 904 "to take such steps, and adopt such means, as may be reasonably necessary to enforce the laws of the Commonwealth."

The issue remains as to the proper standard and the burden of proof that should be applied by the president judge, as well as the appellate court, in reviewing a president judge's decision to allow or deny the Attorney General to supersede a District Attorney. We believe, in view of the fact that the District Attorney is statutorily and constitutionally responsible for law enforcement at the local level, that the Attorney General must establish good cause for the supersession. Supersession is not a "reasonably necessary [step] to enforce the laws of the Commonwealth" unless it is established, after a consideration of all the circumstances, that the District Attorney abused his discretion. Our holding therefore does no violence to § 904 of the Administrative Code. Moreover, we think significant the expressed preference of the General Assembly which has retained for nearly half a century the statute vesting this discretion in the president judge (§ 907) but rejecting a provision giving the Attorney General the same discretion. See Pa.Leg.J. 12–15, 38–42, 62 (1938); Pa.Leg.J. 414–15, 465–68, 624 (1939). In insulating to this degree the District Attorney's office from outside intervention, we do no more than confirm the legislative judgment that accountability and responsibility in law enforcement should coexist to the fullest extent possible.

In this case, the Attorney General did not seek appellate review of President Judge Bradley's refusal to authorize intervention and did not initiate a formal petition before the president judge. Thus, no hearing has been held before the president judge in order to determine whether the Attorney General is able to establish good cause for the supersession. The lack of any petition or hearing before the president

judge is understandable since the Attorney General did not have the benefit of our present decision. We thus deem it appropriate to afford the Attorney General an opportunity to initiate a petition for supersession before the president judge.

Accordingly, the order of Judge Cavanaugh is vacated and any action before Judge Cavanaugh relating to the issue of supersession in this case is dismissed without prejudice to the Attorney General to proceed, if desired, before the president judge by filing a petition for supersession within thirty days of the filing of this opinion.

EAGEN, C. J., and O'BRIEN, J., join in this opinion.

POMEROY, J., filed a separate opinion in which NIX, J., joined.

ROBERTS, J., filed a dissenting opinion in support of reversal.

JONES, former C. J., did not participate in the decision of this case.

ROBERTS, Justice, dissenting in support of reversal.

On August 31, 1975, in a Philadelphia restaurant, Martin Schab, a Philadelphia police officer, fired several shots into the back and side of Anthony Majewski. These shots, which perforated Majewski's heart and lungs, caused his death.

The District Attorney of Philadelphia, on the basis of his investigation, concluded that the killing was an excusable homicide; he has refused to prosecute this case.

After a four week investigation, the office of the Attorney General of Pennsylvania, examining the same information available to the District Attorney of Philadelphia, concluded that the evidence established not a case of excusable homicide, but rather a prima facie case of murder.

Anthony Majewski was one of twenty-six civilians killed by police officers in Philadelphia in 1975. By comparison, in New York City, four times more populous than Philadelphia, nineteen civilians were killed in 1974. The Attorney General

of Pennsylvania asserts that, in each and every one of twenty-six shootings by Philadelphia Police, the District Attorney of Philadelphia has found justifiable homicide. The Attorney General also asserts that public statements by witnesses to the shooting of Anthony Majewski indicated that the killing was murder, and that the District Attorney's failure to prosecute raises doubts about the impartiality of law enforcement. The Attorney General sought on both common law and statutory authority to supersede the decision of the District Attorney not to prosecute Martin Schab.

The opinion of Mr. Justice Manderino concludes that the Attorney General has neither common law nor independent statutory authority under Section 904 of the Administrative Code of 1929, P.L. 177, 71 P.S. § 294 (1962), but only a limited authority to supersede under his new interpretation of Section 907 of the Administrative Code of 1929, 71 P.S. § 297. The opinion of Mr. Justice Manderino also concludes that the proceedings should be remanded, requiring that the Attorney General to prove to the President Judge of Philadelphia that the District Attorney has abused his discretion in refusing to prosecute this homicide.

The opinion of Mr. Justice Pomeroy concludes that the Attorney General should be permitted to supersede the District Attorney so long as it cannot be shown that the Attorney General has abused his discretion. Mr. Justice Pomeroy would remand and require the District Attorney to show an abuse of discretion on the part of the Attorney General in initiating this prosecution.

The opinion of Mr. Justice Manderino imposes unwarranted restraints on the Attorney General's authority to proceed with prosecution by setting a standard virtually impossible to satisfy, even when, as here, apparent conflicts of interest and uneven law enforcement make such authority essential to preserve public confidence in administration of justice. Instead of requiring a court to determine whether the District Attorney has abused his discretion, the proper approach would permit the Attorney General to proceed with prosecution if he has a reasonable basis for believing, as this

record clearly establishes, that but for improper considerations, prosecution would have been instituted.

Moreover, the opinions of Mr. Justice Manderino and Mr. Justice Pomeroy suffer from the same jurisprudential evil—both opinions for remand impose unnecessary and unjustified delay upon this long-postponed prosecution of the August, 1975 shooting of Anthony Majewski. No remand is necessary under either of the standards proposed by the opinions for remand, because the record clearly demonstrates that each standard has already been met. Because this new judicially-created delay unnecessarily stultifies the prompt and effective administration of criminal justice, I dissent.

## I

## REMAND IS UNNECESSARY AND PRODUCES MORE DELAY OF THIS IMPORTANT ISSUE

The opinion of Mr. Justice Manderino, remanding to allow the Attorney General to establish that the District Attorney has abused his discretion, is unnecessary. The record clearly establishes that the District Attorney has abused his discretion in refusing to prosecute this case. The victim was shot several times in the back and side, in the presence of eyewitnesses; the identity of the assailant is known; eyewitnesses believed that the shooting was unprovoked; and the Attorney General, upon reviewing the evidence, determined that a prima facie case of murder existed. Nothing more is required to show that the District Attorney has abused his discretion and that prosecution should have been instituted. Thus under the standard of the opinion of Mr. Justice Manderino, the record is complete and the Attorney General should be permitted to proceed with the prosecution.

Moreover, the opinion of Mr. Justice Pomeroy, proposing to remand to determine whether the Attorney General has abused his discretion in choosing to institute prosecution, is likewise unwarranted. The Attorney General has already established a reasonable basis for believing that, had the

perpetrator of the incident not been a police officer, prosecution of this homicide would have been commenced rather than delayed for more than two years. Further, the Attorney General has convincingly shown that public trust in the prosecution of police shootings of civilians has deteriorated because of the District Attorney's steadfast refusal to prosecute such homicides. The record firmly indicates that the proposed standard of Mr. Justice Pomeroy has been met and the Attorney General should be permitted to proceed with prosecution.

All that a remand of these proceedings will accomplish is more delay in bringing this case to trial. Twenty-nine months have already elapsed since the killing of Anthony Majewski. This Court has all the record it needs to decide whether the Attorney General should be allowed to prosecute this case under either standard advanced by the opinions for remand; by remanding, instead of deciding now whether the Attorney General may proceed to trial, the Court continues to suspend the Attorney General's efforts to bring to trial this case of immediate public importance.

## II

### THE ATTORNEY GENERAL SHOULD NOT BE REQUIRED TO PROVE THAT THE DISTRICT ATTORNEY ABUSED HIS DISCRETION

At common law, state attorneys general had broad authority to supersede local prosecutors. See *Commonwealth ex rel. Minerd v. Margiotti*, 325 Pa. 17, 188 A. 524 (1936); *Commonwealth v. Lehman*, 309 Pa. 486, 164 A. 526 (1932); *People v. Gibson*, 53 Colo. 231, 125 P. 531 (1912); *Commonwealth v. Kozlowsky*, 238 Mass. 379, 131 N.E. 207 (1921); *State ex rel. Young v. Robinson*, 101 Minn. 277, 112 N.W. 269 (1907). The broad authority to supersede associated with the office of Attorney General was incorporated in the Administrative Code of 1929, §§ 704, 901 and 904, 71 P.S.

§§ 244, 291 and 294 (1962).[1]  *Commonwealth ex rel. Minerd v. Margiotti,* supra;  *Commonwealth v. Lehman,* supra.

Section 904 of the Administrative Code of 1929, 71 P.S. § 294, authorizes the Attorney General to take steps which are reasonably necessary to enforce the laws of the Commonwealth.  Section 904 provides:

"*Investigation and law enforcement*

The Department of Justice shall have the power, and its duty shall be, with the approval of the Governor:

(a) To investigate any violations, or alleged violations, of the laws of the Commonwealth which may come to its notice;

(b) To take such steps, and adopt such means, as may be reasonably necessary to enforce the laws of the Commonwealth."

In *Commonwealth ex rel. Minerd v. Margiotti,* supra, this Court held that Section 904 authorizes the Attorney General to supersede the District Attorney.  After reviewing the origins and powers of the office of Attorney General in this Commonwealth along with those of Attorneys General in other jurisdictions,[2] this Court concluded:

1. Section 704 of the Administrative Code of 1929, 71 P.S. § 244, provides:

   "*Attorney General*

   The Attorney General shall be the legal advisor of the Governor, in the performance of his official duties, and the chief law officer of the Commonwealth.

   He shall exercise such powers and perform such duties as may now or hereafter be vested in or imposed upon him by the Constitution and laws of this Commonwealth."

   Section 901 of the Administrative Code of 1929, 71 P.S. § 291, provides:

   "The Department of Justice shall, subject to any inconsistent provisions in the act contained, continue to exercise the powers and perform the duties vested in and imposed upon the Attorney General, the Attorney General's Department, and the Department of Justice."

   Section 904 is quoted in full in text.

2. At common law, the attorney general was the chief law officer of the state.  The duties of the attorney general included the responsibility "[b]y information, to bring certain classes of persons accused of crimes and misdemeanors to trial." *Commonwealth ex rel. Min-*

"the Attorney General of Pennsylvania is clothed with the powers and attributes which enveloped Attorneys General at common law, including the right to investigate criminal acts, to institute proceedings in the several counties of the Commonwealth, to sign indictments, to appear before the grand jury and submit testimony, to appear in court and to try cases on the Commonwealth's behalf, *and, in any and all these activities to supersede and set aside the district attorney when in the Attorney General's judgment such action may be necessary.*"

Id. 325 Pa. at 30–31, 188 A. at 531 (emphasis added). This Court in *Minerd* in 1936 specifically rejected the argument put forth today in the opinion of Mr. Justice Manderino; namely, that Section 907 of the Administrative Code of 1929,

*erd v. Margiotti*, 325 Pa. 17, 22, 188 A. 524, 526 (1936), quoting *People v. Miner*, 2 Lans. (N.Y.) 396 (1868).

The framework of the powers of the Attorney General at common law was incorporated into the system of American state governments:

"Upon the organization of governments in this country, most, if not all, of the commonwealths which derive their system of jurisprudence from England adopted the office of attorney general as it existed in England  .    . .."

*Hunt v. Chicago Horse & Dummy R. Co.*, 121 Ill. 638, 13 N.E. 176 (1887). The office of Attorney General of this Commonwealth drew its existence, for eighty years, from the common law. See Act of January 28, 1777, 1 Sm.L. 429, § 2, 46 P.S. § 152 (1969).

Until 1850, the Attorney General was in direct charge of the prosecution of criminal cases in this Commonwealth. This was accomplished through the assignment of Deputy Attorneys General throughout the Commonwealth. *Commonwealth ex rel. Minerd v. Margiotti*, supra 325 Pa. at 29, 188 A. at 529.

The system of appointed Deputy Attorneys General was replaced with a system of elected District Attorneys. The Act of May 3, 1850, P.L. 654, § 1, 16 P.S. § 9952 (1956), which created the office of the District Attorney, empowered District Attorneys to

"sign all bills of indictment, and conduct in court all criminal and other prosecutions in the name of the Commonwealth, or when the state is a party, which arise in the county for which he is elected, and perform all the duties which now by law are to be performed by deputy attorney generals  .    . .."

The Act of 1850 did not diminish the broad supervisory powers of the Attorney General, however. *Commonwealth v. Lehman*, 309 Pa. 486, 164 A. 526 (1932).

71 P.S. § 297,[3] was intended to limit the Attorney General's broad power to supersede.

The opinion of Mr. Justice Manderino, despite *Minerd*, the clearly controlling law of this jurisdiction since 1936, and the many decisions building upon it,[4] today creates an unprecedented interpretation of this statutory scheme. Here, where statutory interpretation affecting so fundamental a doctrine as supersession is involved, *stare decisis* deserves greater respect. See *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Absent compelling circumstances, this Court should adhere to *Minerd* and the many decisions which build upon it. No such compelling circumstances are offered in the opinion of Mr. Justice Manderino;[5] indeed, none exist.

**3.** Section 907 of the Administrative Code of 1929 provides:

> *"Special attorneys in criminal cases*
> When the president judge, in the district having jurisdiction of any criminal proceedings, before any court of oyer and terminer, general jail delivery, or quarter sessions, in this Commonwealth, shall request the Attorney General to do so, in writing, setting forth that, in his judgment, the case is a proper one for the Commonwealth's intervention, the Attorney General is hereby authorized and empowered to retain and employ a special attorney or attorneys, as he may deem necessary, properly to represent the Commonwealth in such proceedings, and to investigate charges, and prosecute the alleged offenders against the law. Any attorney, so retained and employed, shall supersede the district attorney of the county in which the case or cases may arise, and shall investigate, prepare, and bring to trial the case or cases to which he may be assigned. He shall take the oath of office required by law to be taken by district attorneys, and shall be clothed with all the powers and subject to all the liabilities imposed upon them by law. The compensation for services rendered, and necessary expenses incurred by such attorney or attorneys, shall be fixed by the Attorney General."

**4.** E. g., *Dauphin County Grand Jury Proceedings No. 1*, 332 Pa. 289, 2 A.2d 783 (1938); *Dauphin County Grand Jury Proceedings No. 3*, 332 Pa. 358, 2 A.2d 809 (1938); *Margiotti Appeal*, 365 Pa. 330, 75 A.2d 465 (1950); *Commonwealth ex rel. Margiotti v. Orsini*, 368 Pa. 259, 81 A.2d 891 (1951).

**5.** The opinion of Mr. Justice Manderino asserts that Pennsylvania "seems" to be the only jurisdiction which authorized, until today, supersession on the basis of the broad authority vested in the Attorney General. On the contrary, cases from other jurisdictions support the exercise of supersession. E. g., *D'Amico v. Board of*

The repudiation of *Minerd* and the many decisions upon which it is relied is unfortunate not only because it departs from principles of *stare decisis*, but also because the end result is the imposition of an unwise, unnecessary, and unjustified restraint on the fair and equal enforcement of criminal justice. Supersession helps preserve the fair, orderly, and uniform administration of justice and should be encouraged. See ABA Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function, The Prosecution Function § 2.10 (Approved Draft, 1971). In instances where the District Attorney is implicated in an offense, e. g., *Commonwealth ex rel. Minerd v. Margiotti*, 325 Pa. 17, 188 A. 524 (1936), where the public

*Medical Examiners*, 11 Cal.3d 1, 112 Cal.Rptr. 786, 520 P.2d 10 (1974); *State v. Finch*, 128 Kan. 665, 280 P. 910 (1928); *People v. Karalla*, 35 Mich.App. 541, 192 N.W.2d 676 (1971). See *State of Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266 (5th Cir. 1976); *State of Illinois v. Bristol-Myers Co.*, 152 U.S.App.D.C. 367, 470 F.2d 1276 (1972).

The opinion of Mr. Justice Manderino rejects the reasoning of *Minerd* because it believes:

"[i]t would be incongruous to place the district attorney in the position of being responsible to the electorate for the performance of his duties while actual control over his performance was, in effect, in the Attorney General. To countenance such a separation of accountability and control undermines self-government and promotes centralization."

The fear that self-government will be undermined is unfounded. The exercise of authority by an appointed Attorney General is not unlike the same exercise of authority by appointed federal officials over both elected and appointed state officials. The federal scheme has worked well in protecting our system of government. Even assuming that unfavorable consequences flow from endowing an appointed Attorney General with the power to supersede an elected District Attorney, those consequences are tempered by the Attorney General's direct responsibility to an elected Governor.

If anything, the ability of the Attorney General to supersede enhances "self-government." We can better avoid federal intervention in our legal processes if we encourage state officials to protect federal rights. See *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).

It has been observed that state governments have failed to enforce the law against official misconduct and corruption; the states have abdicated this responsibility to federal prosecutors. See Tuerkheimer, The Executive Investigates Itself, 65 Calif.L.Rev. 597 (1977). The opinion of Mr. Justice Manderino only exacerbates this problem.

trust in local officials has deteriorated, e. g., *Margiotti Appeal*, 365 Pa. 330, 75 A.2d 465 (1951), or where a conflict of interest might interfere with the judgment of the District Attorney, see ABA Project on Standards for Criminal Justice, *supra* at § 1.2 the District Attorney's judgment may be impaired, and an alternative enforcement mechanism should be available to assume prosecutorial responsibilities. Supersession serves this important governmental function.

The opinion of Mr. Justice Manderino ignores these considerations and instead requires that when the Attorney General determines the need for supersession, he can do so only according to today's new interpretation of Section 907 of the Administrative Code of 1929. The opinion of Mr. Justice Manderino requires the Attorney General to petition the President Judge for permission to supersede and to prove that the District Attorney abused his discretion in refusing to prosecute.[6]

This standard, requiring a showing by the Attorney General that the District Attorney has abused his discretion, may be difficult to meet in the vast majority of cases in which supersession is appropriate. The difficulty arises because courts are reluctant to interfere with the internal operations of the Office of District Attorney, and will not find that the District Attorney has abused his discretion absent positive proof of the most grotesque misconduct. See *United States v. Cox*, 342 F.2d 167 (5th Cir. 1965); *United States ex rel. Miller v. Rundle*, 270 F.Supp. 55 (E.D.Pa.1967); S. Cox, Prosecutorial Discretion: An Overview, 13 Am.Crim. L.Rev. 383, 393–403 (1976). The discretion vested in a prosecutor is so broad, see ABA Project on Standards for Criminal Justice, *supra* at § 3.9 that a District Attorney if he so desires—and this record clearly indicates such a desire—can always rationalize a failure to prosecute. Thus the new requirement that the Attorney General prove an abuse of discretion in the District Attorney's decision not to prosecute

6. The opinion of Mr. Justice Manderino does not indicate whether the proof must be by a preponderance of the evidence, by clear and convincing evidence, or by some other standard.

virtually destroys the authority of the Attorney General to supersede and gives the District Attorney nearly absolute power to allow a crime to go unprosecuted.

Moreover, by requiring the Attorney General to show an abuse of discretion by the District Attorney, the opinion of Mr. Justice Manderino compels an inquiry into the facts surrounding the decision of the District Attorney not to prosecute. While in some circumstances such an inquiry may open up the internal operations of the Office of the District Attorney to much-needed public scrutiny, such a pre-trial inquiry may also prejudicially expose the facts involved in the yet uncharged criminal offense, diminish the possibility of a fair trial, and possibly require changes of venue and create other administrative complications.

The more appropriate focus in a case involving supersession is whether the Attorney General has a reasonable basis for believing that, absent improper considerations, prosecution would have been commenced. See *Commonwealth ex rel. Minerd v. Margiotti,* supra; *Margiotti Appeal,* supra; ABA Standards for Criminal Justice, supra at §§ 1.2 and 2.10. The District Attorney has refused to prosecute this homicide despite compelling evidence that the slaying was unlawful. The Attorney General has established his basis for believing that, in the absence of the steadfast refusal of the District Attorney to prosecute police shootings of civilians, the prosecution of the killing of Anthony Majewski would have been initiated. The Attorney General's basis for this belief is reasonable. Thus supersession is a "reasonably necessary" means of enforcing the laws of this Commonwealth within the meaning of Section 904 of the Administrative Code of 1929, 71 P.S. § 294, and should be permitted.

Supersession is especially important where, as here, prosecutorial inaction creates public mistrust in local officials. Public trust in the District Attorney in prosecuting police shootings of civilians has deteriorated because of the District Attorney's refusal to prosecute this kind of homicide. The record with indisputable clarity establishes the deliberate and continuing refusal of the District Attorney to prosecute

a murder which ordinarily would have been prosecuted. Supersession by the Attorney General is therefore necessary in this case to maintain public confidence in the integrity of law enforcement and public justice.

## III

## THE OPINIONS FOR REMAND FRUSTRATE THE PROMPT AND ORDERLY ENFORCEMENT OF THE CRIMINAL LAW

The record establishes convincingly that the District Attorney has abused his discretion and the Attorney General has acted reasonably in seeking prosecution. Neither the Attorney General, who appeared before this Court twenty-two months ago requesting authority to bring this case to trial, nor the citizens of this Commonwealth, who have waited even longer for proper measures to be taken, should be subjected to the continuing, unnecessary delay now created by the opinions for remand.

One opinion unjustifiably overrules the long line of this Court's cases authorizing the Attorney General to commence prosecution. Both opinions have the unfortunate effect of further frustrating the Attorney General's effort to preserve the integrity of the administration of criminal justice. Equally disturbing, the opinions continue the absolute immunity to suspected criminal activity heretofore granted by the inaction from 1975 through 1977 of the then District Attorney. The further postponement of this excessively delayed criminal prosecution casts a dark prospect upon the fair and orderly administration of criminal justice which no American community should be compelled to endure.

I would reverse the order of the court of common pleas and permit the Attorney General to proceed with prosecution forthwith.

POMEROY, Justice, separate opinion.

I respectfully disagree with the plurality opinion of Mr. Justice MANDERINO. In my view, it misconstrues the

Administrative Code of 1929 [1] and fails to present adequate reasons for overruling this Court's many prior decisions on the question of supersession.

Under Section 704 of the Code, 71 P.S. § 244, the Attorney General is declared to be "the chief law officer of the Commonwealth," and he has the power, under Section 904 of the Code, 71 P.S. § 294, "[t]o investigate any violations, or alleged violations, of the laws of the Commonwealth which may come to [his] notice," and "[t]o take such steps, and adopt such means, as may be reasonably necessary to enforce the laws of the Commonwealth." I believe that this broad language adopts the common law powers of the Attorney General to supersede his subordinates, see *Commonwealth ex rel. Minerd v. Margiotti*, 325 Pa. 17, 21–31, 188 A. 524 (1936); *Margiotti Appeal*, 365 Pa. 330, 75 A.2d 465 (1950); Statutory Construction Act of 1972, 1 Pa.C.S. 1921(c)(5), and that this supervisory power remains until such time as the General Assembly indicates that it is to be limited. See *People v. Karalla*, 35 Mich.App. 541, 192 N.W.2d 676, 678 (1971).

In addition, I cannot agree with the plurality's conclusion that the General Assembly has in fact limited the power of supersession. In the first place, the creation of the locally elected office of district attorney by the Act of May 3, 1850, P.L. 654, § 1, 16 P.S. § 9952 (1956), together with the grant of power in district attorneys to "perform all the duties which now by law are to be performed by deputy attorneys general," *id.*, does not to me indicate a legislative intent to create autonomous local law enforcement bodies. Nor does the district attorney's status as a constitutional officer, Pa.Const. art. IX, § 4, reflect any similar intent, since the Constitution is altogether silent on the question of the district attorney's powers and duties. Mr. Justice MANDERINO's reliance on these provisions as limitations on the Attorney General's supervisory power represents an adoption of constructions that have been rejected by this

1. Act of April 9, 1929, P.L. 177, art. IX, *as amended*, 71 P.S. §§ 291 *et seq.* (1962 & Supp.1977–78).

Court. Compare *Commonwealth v. Fudeman*, 396 Pa. 236, 152 A.2d 428, *cert. denied*, 361 U.S. 902, 80 S.Ct. 211, 4 L.Ed.2d 157 (1959), *with id.*, 396 Pa. at 244–77, 152 A.2d 428 (Musmanno, J., dissenting). In my view those interpretations have been properly rejected both because of the Attorney General's status as chief law officer of the Commonwealth and because of a district attorney's duty to enforce the laws of the Commonwealth—a duty in which all of Pennsylvania's citizens, no matter where they live, have an interest.

In the second place, I cannot agree that Section 907 of the Administrative Code represents a limitation on the Attorney General's power of supersession.[2] This statute, as I read it, provides another means by which the Department of Justice may be notified of alleged violations of the laws of the Commonwealth, *see* Administrative Code § 904(a), *supra*, and regulates the manner in which outside counsel ("special attorneys") may be employed by the Department. This Court has rejected the contention that this section operates as a limitation, see *Commonwealth v. Lehman*, 309 Pa. 486, 164 A. 526 (1932); *Commonwealth ex rel. Minerd v. Margiotti*, 325 Pa. 17, 188 A. 524 (1936), and if the Administrative Code should be amended to overturn our prior construction

2. Section 907, 71 P.S. § 297 (1962), provides:

"When the president judge, in the district having jurisdiction of any criminal proceedings, before any court of oyer and terminer, general jail delivery, or quarter sessions, in this Commonwealth, shall request the Attorney General to do so, in writing, setting forth that, in his judgment, the case is a proper one for the Commonwealth's intervention, the Attorney General is hereby authorized and empowered to retain and employ a special attorney or attorneys, as he may deem necessary, properly to represent the Commonwealth in such proceedings, and to investigate charges, and prosecute the alleged offenders against the law. Any attorney, so retained and employed, shall supersede the district attorney of the county in which the case or cases may arise, and shall investigate, prepare, and bring to trial the case or cases to which he may be assigned. He shall take the oath of office required by law to be taken by district attorneys, and shall be clothed with all the powers and subject to all the liabilities imposed upon them by law. The compensation for services rendered, and necessary expenses incurred by such attorney or attorneys, shall be fixed by the Attorney General."

of its provisions, that task is one for the General Assembly, not this Court. In sum, I believe that the law should remain as it long has been: the Attorney General has the power to supersede a district attorney, subject to judicial review of his action for an abuse of discretion. *Commonwealth ex rel. Minerd v. Margiotti, supra; Margiotti Appeal, supra; Commonwealth v. Fudeman, supra.*[3]

Whether the Attorney General has abused his discretion in seeking to supersede the district attorney has not been determined in this case, and indeed cannot be determined on the record before us. The arguments before the court below were centered on the Attorney General's power to supersede *vel non,* and the allegations in the complaint charging murder have never been tested at a preliminary hearing.[4] The Attorney General's "action should not be made subject to court approval initially since the matter is one within the functions and responsibilities of the executive branch of government. A sufficient check against arbitrary use of the power of supersession can be found in a requirement that the grounds for the action be placed on the record . . ." ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function § 2.10(a), Commentary, at 75 (Tent.Draft, 1970). In view of our case law, such reasons should be filed with the lower court. *In re Dauphin County Grand Jury Investigation Proceedings (No. 3) [In re Shelley],* 332 Pa. 358, 367, 2 A.2d 809 (1938). If the district attorney then chooses to contest the Attorney General's action, he should of course be able to do so; although the conflict is one between executive officers, a legal standard is involved, the authoritative application of which is for the

**3.** This does not, of course, mean that the Attorney General's powers are boundless. See *Matson v. Jackson,* 368 Pa. 283, 83 A.2d 134 (1951) (supersession power does not permit Attorney General to hold hearings on alleged political views of an assistant district attorney); *Commonwealth ex rel. Margiotti v. Orsini,* 368 Pa. 259, 81 A.2d 891 (1951) (Attorney General has no subpoena powers).

**4.** The statements in the record regarding the number of killings of civilians by police officers in recent years, and the district attorney's action in those cases, are not relevant to a determination of whether a prima facie case of murder exists in the case of Martin Schab.

courts. See, *e. g., United States v. Nixon,* 418 U.S. 683, 692–98, 94 S.Ct. 3090, 41 L.Ed.2d 1039, 1055–58 (1974). Since such a contest may, as this one has, become protracted and involve collateral issues, and since some problems may arise with regard to the defendant's rights, see, *e. g.,* Pa.R. Crim.P. 1100, it would be preferable to have the question of the propriety of supersession adjudicated in a proceeding separate from the preliminary hearing itself.[5]

I would vacate the order of the court below and remand this case for further proceedings consistent with this opinion.

NIX, J., joins in this separate opinion.

**5.** I have not here attempted to spell out the precise procedure which should be followed in a case of this sort; no doubt it should be dealt with in a rule of criminal procedure promulgated by this Court. As indicated in the text, however, the procedure would involve recognition of the power of the Attorney General to supersede the District Attorney upon the Attorney General filing of record in the court of common pleas (or with the president judge thereof) a statement of the grounds for his supersession, with notice thereof to the district attorney of the county, and an opportunity in that officer to contest the action of the Attorney General if he chooses to do so.

The plurality opinion states that, in view of Section 907 of the Administrative Code, 71 P.S. § 297 (1962), a decision on supersession should be made only by the president judge of the court of common pleas of the county. While such a limitation may be wise in many cases, given the importance of the question, I can find nothing in Section 907 that requires that no judge except a president judge may entertain a supersession matter.