# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Commonwealth of Pennsylvania,   :
by and through the Philadelphia District   :
Attorney, Larry Krasner, and The   :
Commonwealth of Pennsylvania, by and   :
through the Allegheny County District   :
Attorney, Stephen A. Zappala, Jr.,   :
  :
         Petitioners   :
  :
        v.   : No. 283 M.D. 2022
  : Argued: October 12, 2022
The Attorney General of the   :
Commonwealth of Pennsylvania,   :
McKesson Corp., Cardinal Health, Inc.,   :
AmerisourceBergen Drug Corp., Johnson   :
& Johnson, Janssen Pharmaceuticals, Inc.,   :
Ortho-McNeil-Janssen Pharmaceuticals,   :
Inc., and Janssen Pharmaceutica, Inc.,   :
  :
         Respondents   :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE ELLEN CEISLER, Judge
             HONORABLE LORI A. DUMAS, Judge
             HONORABLE STACY WALLACE, Judge


OPINION BY JUDGE WOJCIK           FILED: January 26, 2024


       Before this Court, in our original jurisdiction, are the cross-Applications for Summary Relief (ASRs) filed by the Petitioners, Commonwealth of Pennsylvania, by and through Philadelphia District Attorney, Larry Krasner (DA Krasner), and the Allegheny County District Attorney, Stephen A. Zappala, Jr. (DA

Zappala) (collectively, DAs); Respondent Attorney General of the Commonwealth of Pennsylvania (Attorney General); and Respondents McKesson Corp., Cardinal Health, Inc., AmerisourceBergen Drug Corp. (Settling Distributors), and Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc. (Settling Manufacturers) (collectively, Settling Defendants). In this case of first impression, the parties seek a declaration on the issue of whether the Attorney General has the authority to settle and release claims brought by the DAs under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL).[1] Upon review, we grant summary relief in favor of the Attorney General, deny the relief sought by the DAs, and dismiss the relief sought by Settling Defendants as moot.

## I. Background

This case involves a dispute of authority regarding the Attorney General's ability to settle and release claims brought by the DAs under the UTPCPL against manufacturers and distributors of prescription opioid drugs as part of the nationwide settlement with Settling Defendants.

On May 17, 2022, the DAs filed a Petition for Review in the Nature of a Complaint for Declaratory and Injunctive Relief (PFR). Therein, the DAs alleged that they filed civil enforcement actions, as authorized by Section 4 of the UTPCPL, 73 P.S. §201-4, in the name of the Commonwealth, against certain manufacturers and distributors of opioid drugs, including Settling Defendants, seeking to hold them accountable for engaging in commercial activities that fueled the deadly opioid

---

[1] Act of December 17, 1968, P.L. 1224, reenacted by the Act of November 24, 1976, P.L. 1166, *as amended*, 73 P.S. §§201-1 - 201-10.

epidemic.[2] Therein, the DAs similarly alleged that the manufacturers violated the UTPCPL by using unfair methods of competition and unfair or deceptive acts or practices in the manufacture, sale, and promotion of prescription opioid products, and that the distributors furthered the improper distribution of prescription opioid drugs made and marketed by manufacturers. Both enforcement actions sought injunctive relief and monetary remedies derived from the disgorgement of revenues. *See* PFR, Exhibits C and D.

The DAs were not alone in pursuing legal recourse against opioid manufacturers and distributors. In Pennsylvania, district attorneys from various counties including Berks, Bucks, Chester, Clearfield, Dauphin, Delaware, Erie, Lehigh, Northampton, and Westmoreland, filed similar suits as did other states, territories, and local governments.[3] PFR, ¶34. On April 18, 2022, the Attorney General filed two suits on behalf of the Commonwealth in this Court under the UTPCPL, which this Court consolidated. *See Commonwealth of Pennsylvania v. Johnson & Johnson* (Pa. Cmwlth., Nos. 243 & 244 M.D. 2022, consolidation order filed May 9, 2022).

During the pendency of these multiple enforcement actions, the Attorney General, together with attorneys general from other states, negotiated two nationwide settlement agreements (Settlement Agreements) with the Settling

_____

[2] DA Krasner filed an amended complaint on November 14, 2018, in the Philadelphia County Court of Common Pleas; DA Zappala filed a complaint on February 3, 2021, in the Allegheny County Court of Common Pleas.

[3] Similar complaints were filed against retail pharmacies for their role in the opioid crisis. *See, e.g.*, *Commonwealth of Pennsylvania v. RiteAid Corporation* (Pa. Cmwlth., No. 215 M.D. 2022). In addition, private parties filed actions under Section 9.2 of the UTPCPL, added by the Act of November 24, 1976, *as amended*, 73 P.S. §201-9.2. This case, however, does not concern claims against retail pharmacies or any private UTPCPL claim, only claims against the Settling Defendants.

Defendants to resolve claims against those defendants for their role in contributing to the opioid crisis.[4] The Settling Defendants agreed to pay a total of $26,000,000,000 to the states and their "Subdivisions," which included $1,000,000,000 for Pennsylvania. In Pennsylvania, 333 of 356 eligible municipal entities voluntarily agreed to join the Settlement Agreements, including all 67 counties, 256 of 277 municipalities, and 10 of 12 district attorneys. The City of Philadelphia and Allegheny County were among the municipalities that joined the Settlement Agreements, but their DAs refused to discontinue their UTPCPL claims. On behalf of the Commonwealth, the Attorney General and Settling Defendants then filed a Joint Motion to Enter Final Consent Judgments with this Court to approve both Settlement Agreements, which this Court entered on July 12, 2022 (Consent Judgments). PFR, Exhibits G and H; *see Commonwealth of Pennsylvania v. Johnson & Johnson* (Pa. Cmwlth., Nos. 243 & 244 M.D. 2022, filed July 12, 2022).

As part of the settlement, the Attorney General, acting on behalf of the Commonwealth, agreed to settle and release all claims against the Settling Defendants, including those previously filed by the DAs. In the Settlement Agreements, the Attorney General represented and warranted that he had "the authority to settle and release" all claims.[5] PFR, Exhibit A, Distributor Settlement Agreement at 48, ¶XI(G); Exhibit B, Janssen Settlement Agreement at 17, ¶IV(E). As to whether the Attorney General had such power, the parties agreed that disputes

---

[4] One Settlement Agreement resolved claims against the Settling Manufacturers, identified as "Janssen Settlement Agreement"; the other resolved claims against the Settling Distributors, identified as "Distributor Settlement Agreement." PFR, Exhibits A & B.

[5] This was further confirmed in a memorandum of understanding between the settling parties. *See* Commonwealth Application for Summary Relief, Exhibit B, ¶2. Therein, the Attorney General agreed to take all necessary steps to secure the dismissal with finality of the released claims, including those of the DAs. *Id.*, ¶6.

4

regarding the Attorney General's "authority under the state law, including the extent of the authority to release claims" would be resolved in state court. PFR, Exhibit A, Distributor Settlement Agreement at 36, ¶VI(F)(1)(b)(iv); *id.*, Exhibit B, Janssen Settlement Agreement at 44, ¶XII(F)(2)(d). The issue of the Attorney General's authority is the precise issue now before this Court.

By filing the PFR, the DAs seek declaratory and injunctive relief on the basis that the Attorney General lacks the authority to extinguish their UTPCPL claims. In response to the DAs' PFR, both the Attorney General and Settling Defendants filed answers and new matters, including counterclaims seeking declaratory relief that the Attorney General has the authority to release all UTPCPL claims against the Settling Defendants on behalf of the Commonwealth, including the DAs' claims. As there are no factual issues in dispute, the DAs, Attorney General, and Settling Defendants have each moved for summary relief by filing cross-ASRs.[6]

---

[6] As this Court has explained:

> An [ASR] may be granted if a party's right to judgment is clear and no material issues of fact are in dispute. Pa.R.A.P. 1532(b); *Jubelirer v. Rendell*,[] 953 A.2d 514, 521 ([Pa. ]2008); *Eleven Eleven Pennsylvania, LLC v. Commonwealth*, 169 A.3d 141, 145 (Pa. Cmwlth. 2017). When ruling on an application for summary relief, "'we must view the evidence of record in the light most favorable to the non-moving party and enter judgment only if there is no genuine issue as to any material facts and the right to judgment is clear as a matter of law.'" *Eleven Eleven*, 169 A.3d at 145 (quoting *Markham v. Wolf*, 147 A.3d 1259, 1270 (Pa. Cmwlth. 2016) (citation omitted)).

*Gregory v. Pennsylvania State Police*, 185 A.3d 1202, 1205 (Pa. Cmwlth. 2018).

## II. Issue

The crux of the matter is whether the Attorney General, who has concurrent authority with the DAs to bring a UTPCPL enforcement action in the name of the Commonwealth, may supersede or override the DAs' statutory enforcement authority by settling or releasing the DAs' previously-filed enforcement actions under the UTPCPL over the DAs' objections.

### III. Discussion
### A. Contentions
### 1. DAs

The DAs argue that the Attorney General lacks the authority to settle their ongoing, previously-filed UTPCPL claims. First, the UTPCPL gives both the Attorney General and DAs concurrent authority to bring independent claims on behalf of the Commonwealth and does not provide that the Attorney General may usurp and settle a claim brought by a district attorney. Second, no other Pennsylvania law—including the Pennsylvania Constitution and the Commonwealth Attorneys Act (CAA)[7]—empowers the Attorney General to supersede an elected district attorney in a civil case and release his claims, let alone the ongoing, previously-filed UTPCPL claims at issue in this case. Because the Attorney General did not have the authority to release the DAs' UTPCPL claims, those claims were not released by the Settlement Agreements or the Consent Judgments and may proceed.

---

[7] Act of October 15, 1980, P.L. 950, *as amended*, 71 P.S. §§732-101 - 732-506.

## 2. Attorney General

The Attorney General counters that, although the UTPCPL allows both the Attorney General and any district attorney to bring a claim on behalf of the Commonwealth, this case concerns what happens when two parallel litigations diverge into mutually exclusive tracks, forcing a determination about which official—the Attorney General or a district attorney—can decide the Commonwealth's position. In this situation, it must be the Attorney General who decides what is in the Commonwealth's best interest and who ultimately controls the direction of its UTPCPL claim. First, the Attorney General's broad authority in civil matters empowers him to supersede the authority of a district attorney under the UTPCPL. Although the statutory language does not expressly say what happens when the Attorney General and a district attorney pursue distinct claims, at the time the UTPCPL was drafted, the established law provided that the Attorney General had broad, common law power to supersede a district attorney. Based on the canons of statutory construction, that understanding was grafted into the text of the UTPCPL. Second, changes in the Pennsylvania Constitution and the adoption of the CAA after the UTPCPL was enacted unequivocally give the Attorney General—and not a district attorney—the power to pursue civil litigation on behalf of the Commonwealth. This further solidifies the legal principle that the Attorney General is the final voice for the Commonwealth. Third, as a matter of public policy, any uncertainty or inconsistency about the Commonwealth's position in separate litigations should result in deference to the Attorney General. The Attorney General, as a statewide elected official, is in the best position to determine the Commonwealth's interest. The Attorney General has concluded that the Settlement Agreements are in the best interest of the Commonwealth because they provide

7

industry changes and monetary relief immediately and with certainty. Finally, even if the DAs' actions were permitted to proceed, there is nothing left to attain. The settlements have achieved all of the remedies available for a public UTPCPL claim, including injunctive relief, restitution for victims, and civil penalties.

### 3. Settling Defendants

The Settling Defendants similarly argue that the Attorney General, in his capacity as the Commonwealth's chief law officer, has the constitutional and statutory authority to release UTPCPL claims on behalf of the Commonwealth. The Attorney General has exercised this authority via the Settlement Agreements and Consent Judgments. The Settlement Agreements and Consent Judgments require dismissal of the claims asserted by the DAs against Settling Defendants for three reasons. First, the releases provided by the Attorney General in the Settlement Agreements bar the claims brought by the DAs. There is no dispute that those releases, by their express terms, cover the UTPCPL claims brought by the DAs against Settling Defendants. Under the Pennsylvania Constitution and the CAA, the Attorney General has the ultimate authority over all civil litigation brought in the name of the Commonwealth. Accordingly, the Attorney General has the authority to release UTPCPL claims maintained in the name of the Commonwealth, including in circumstances where those claims were first initiated by subordinate law officers, such as local district attorneys. Such a reading is supported by traditional canons of statutory interpretation as well as by sound public policy. Second, the Consent Judgments are *res judicata*. It is undisputed that the now-final Consent Judgments, which incorporate the terms of the Settlement Agreements, resolve the same UTPCPL claims as those asserted by the DAs. The two sets of claims involve the

8

same parties or their privies as both are asserted on behalf of the Commonwealth of Pennsylvania. Third, the Commonwealth, the City of Philadelphia, and Allegheny County have all released their claims against Settling Defendants and disavowed any entitlement to further relief from the Settling Defendants. Consequently, there are no non-releasing parties left for the DAs to represent. The DAs nonetheless purport to seek relief for those very entities. The fact that the DAs' lawsuits are brought in a purely representative capacity, coupled with the fact that further pursuit of the lawsuits has been expressly disclaimed by the very entities that the DAs purport to represent, compels dismissal of the DAs' UTPCPL claims.

## B. Analysis

Section 4 of the UTPCPL provides:

> Whenever the Attorney General or a District Attorney has reason to believe that any person is using or is about to use any method, act or practice declared by section 3 of this act[, 73 P.S. §201-3,] to be unlawful, and that proceedings would be in the *public interest*, *he may bring an action in the name of the Commonwealth against such person to restrain by temporary or permanent injunction the use of such method, act or practice*.

73 P.S. §201-4 (emphasis added). Section 3 of the UTPCPL declares as unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 P.S. §201-3. The remedies available under the UTPCPL are temporary or permanent injunctive relief, the payment of costs and restitution, and civil penalties. *Id.*; Section 4.1 of the UTPCPL, added by the Act of November 24, 1976, P.L. 1166, 73 P.S. §201-4.1; Section 8(b) of the UTPCPL, 73 P.S. §201-8(b).

9

Although both the Attorney General and a district attorney may bring concurrent enforcement actions under the UTPCPL, the UTPCPL does not make it clear whether the Attorney General may override or supersede a district attorney when conflict in representation of the Commonwealth occurs. Discerning the meaning of the UTPCPL is a question of statutory interpretation.[8] In all matters of statutory interpretation, we are guided by the Statutory Construction Act of 1972 (SCA), 1 Pa. C.S. §§1501-1991.

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa. C.S. §1921(a). "To accomplish that goal, we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear." *O'Rourke v. Commonwealth*, 778 A.2d 1194, 1201 (Pa. 2001).

"When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. §1921(b). The "plain language of a statute generally provides the best indication of legislative intent." *Commonwealth v. Lehman*, 243 A.3d 7, 16 (Pa. 2020). However, when a statute's language is not clear and unambiguous, we may discern legislative intent by considering:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

---

[8] "An issue of statutory construction presents a pure question of law[,] and our standard of review is *de novo* and our scope of review is plenary." *Spahn v. Zoning Board of Adjustment*, 977 A.2d 1132, 1142 (Pa. 2009).

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa. C.S. §1921; *see Klar v. Dairy Farmers of America, Inc.*, 300 A.3d 361, 372 n.56 (Pa. 2023).

We are also mindful that we must presume that "the General Assembly does not intend to violate the Constitution of the United States or this Commonwealth." 1 Pa. C.S. §1922. "[If] a statute is susceptible of two reasonable constructions, one of which would raise constitutional difficulties and the other of which would not, we adopt the latter construction." *Commonwealth v. Herman*, 161 A.3d 194, 212 (Pa. 2017).

Finally, we apply the *in pari materia* rule, which provides:

(a) Statutes or parts of statutes are *in pari materia* when they relate to the same persons or things or to the same class of persons or things.

(b) Statutes *in pari materia* shall be construed together, if possible, as one statute.

1 Pa. C.S. §1932.

With these principles in mind, we first examine the context of the UTPCPL. By its own terms, actions brought under Section 4 of the UTPCPL must be in the "public interest," rather than any private or personal interest. 73 P.S. §201-4. Although district attorneys may bring suit under the UTPCPL, the true party in interest is the Commonwealth, and not the local jurisdiction. 73 P.S. §201-4. The

11

action is filed in the name of the Commonwealth and must be in the "public interest." *Id.*

Next, we turn to the Pennsylvania Constitution and the CAA for guidance as they both relate to the authority of the Attorney General and district attorneys and must be read *in pari materia* with the UTPCPL. 1 Pa. C.S. §1932. The Attorney General's office was established by the 1968 Constitution of Pennsylvania, article IV, section 1, Pa. Const. art. IV, §1, and is included within the executive branch of State government. The Attorney General is the "***chief law officer*** of the Commonwealth and shall exercise such powers and perform such duties as may be imposed by law." Pa. Const. art. IV, §4.1 (emphasis added). As our Supreme Court recently opined: "[T]he Pennsylvania Constitution designates the Attorney General as the 'chief law officer' for the Commonwealth as a whole, accountable directly to the Pennsylvania voters, and independent of the Governor and the Commonwealth agencies. Pa. Const. art. IV, §4.1." *Synthes USA HQ, Inc. v. Commonwealth*, 289 A.3d 846, 859 (Pa. 2023). "Prior to the adoption of [a]rticle [IV], section 4.1, the Attorney General was appointed by the Governor, and served at his pleasure as a member of his cabinet." *Commonwealth v. Carsia*, 517 A.2d 956, 957 (Pa. 1986) (footnotes omitted).

Although the present-day office of the Attorney General is now constitutionally established, the Attorney General's powers are derived from statutes as enacted by the General Assembly. *Carsia*, 517 A.2d at 957. Our Supreme Court has interpreted the constitutional language "as may be imposed by law" as requiring the General Assembly to "statutorily define and regulate the powers and duties of the Attorney General." *Id.* at 958 (quoting Pa. Const., art. IV, §4.1).

In 1980, "[t]he General Assembly utilized that grant of constitutional powers . . . and enacted the CAA." *Carsia*, 517 A.2d at 958. The CAA "made it clear that the powers of the state Attorney General are no longer an emanation from some bed of common law precepts but are now strictly a matter of legislative designation and enumeration." *Id.*

Consistent with the Pennsylvania Constitution, Section 206 of the CAA states: "The Attorney General shall be the chief law enforcement officer of the Commonwealth . . . ." 71 P.S. §732-206. The general powers and duties of the Attorney General are set out in the CAA. Section 201(a) of the CAA declares:

> The Office of Attorney General shall be an independent department and shall be headed by the Attorney General. The Attorney General *shall exercise such powers and perform such duties as are hereinafter set forth*.

71 P.S. §732-201(a) (emphasis added). Our Supreme Court has interpreted this provision as expressly stating "that the powers of the Attorney General are those which are set forth in the [CAA] itself." *Carsia*, 517 A.2d at 958. The Supreme Court continued:

> If there is any doubt that the [CAA] is the sole source of the Attorney General's powers, such doubt must be dispelled by the Final Report of the Joint State Government Commission Task Force on the Office of the Elected Attorney General. That report states that there was substantial consensus for the concept that "[l]egislation enacted by the General Assembly is the exclusive source of the powers and duties of the elected Attorney General pursuant to [a]rticle IV, [s]ection 4.1. . . .

*Id.* (citation omitted).

The CAA distinctly and separately describes the Attorney General's criminal authority and civil authority. The Attorney General's criminal authority is

13

limited. Section 205 of the CAA, 71 P.S. §732-205, governing criminal litigation, empowers the Attorney General to prosecute only certain criminal cases in county court. Section 205(a) of the CAA sets forth specific kinds of criminal cases over which the Attorney General has prosecutorial authority. 71 P.S. §732-205(a). As to three of those case types, the Attorney General shall have "concurrent prosecutorial jurisdiction with the district attorney." 71 P.S. §732-205(b). Specifically, concurrent jurisdiction extends to cases: against State officials or employees affecting public performance; involving corrupt organizations; or arising out of enforcement provisions of a statute charging an agency with a duty to enforce its provision. 71 P.S. §732-205(a)(1), (2) and (6).

Under the CAA, the Attorney General's authority to supersede a district attorney in a particular criminal prosecution is circumscribed. *See* 71 P.S. §732-205(a)(3)-(5). The Attorney General must be invited by a district attorney to step in or "petition the court having jurisdiction over *any* criminal proceeding to permit the Attorney General to ***supersede*** the district attorney in order to prosecute a criminal action or to institute criminal proceedings." 71 P.S. §732-205(a)(3), (4) (emphasis added). To supersede by court petition, the Attorney General must establish "by a preponderance of the evidence that the district attorney has failed or refused to prosecute and such failure or refusal constitutes abuse of discretion." 71 P.S. §732-205(5)*); see Carter v. City of Philadelphia*, 181 F.3d 339, 353 (3d Cir. 1999) ("The Attorney General is permitted only a narrowly circumscribed power to supersede a district attorney in a particular criminal prosecution subject to court authorization under an abuse of discretion standard (or at the district attorney's own invitation.")).

The Attorney General's civil authority under the CAA is much broader. Section 204(c) of the CAA provides that "the Attorney General shall represent the

14

Commonwealth and all Commonwealth agencies . . . in ***any action brought by*** or against the Commonwealth or its agencies, and may intervene in any other action . . . ." 71 P.S. §732-204(c) (emphasis added). "This section unambiguously gives the [Attorney General] the authority to represent . . . the Commonwealth" in ***any*** civil litigation. *Synthes USA HQ*, 289 A.3d at 859-60.

Section 204 of the CAA does not contain a similar supersedure authority applicable to civil litigation. The DAs ask this Court to interpret such omission as demonstrative that the Attorney General has no power to supersede the DAs under the canon of statutory construction, *inclusio unius est exclusio alterius*, "the expression or inclusion of one thing in a statute implies the exclusion of an alternative." *Downs Racing, L.P. v. Commonwealth*, 288 A.3d 542, 548 n.11 (Pa. Cmwlth. 2022) (internal citation and quotation omitted). We do not agree. A comparative review of the history of the offices of Attorney General and district attorney and the statutory division of authority between the two offices illustrate why.

"Prior to 1850, investigation and prosecution of criminal offenses in Pennsylvania were exclusively the duty of the Attorney General of the Commonwealth," or his deputy. *Commonwealth ex rel. Specter v. Bauer*, 261 A.2d 573, 575 (Pa. 1970). In 1850, the General Assembly created the office of elective district attorney. *Id.*; Section 1 of the Act of May 3, 1850, P.L. 654, 16 P.S. §7701. "The elected [d]istrict [a]ttorney was to perform the function of local prosecutor previously performed by the [d]eputy Attorney General." *Commonwealth v. Schab*, 383 A.2d 819, 821 (Pa. 1978). The General Assembly defined the duties of the new office as follows: "The officer so elected shall sign all bills of indictment, and conduct in court ***all criminal and other prosecutions*** in the name of the

15

Commonwealth . . . *which arise in the county for which he is elected*, and perform all duties which now by law are to be performed by deputy attorney generals . . . ." *Id.* (emphasis added); *accord* Section 1402(a) of The County Code.[9]

"In 1874, the district attorney was made a constitutional officer. Pa. Const. [a]rt. XIV, [§]1 (1874), now in Pa. Const. [a]rt. IX, [§]4." *Schab*, 383 A.2d at 821. Article IX, section 4 of the Pennsylvania Constitution states that "[c]ounty officers shall consist of . . . district attorneys . . . ." Pa. Const. art. IX, §4.

Consistent with Pennsylvania Constitution, Section 206 of the CAA provides: "[t]he district attorney shall be the chief law enforcement officer *for the county* in which he is elected." 71 P.S. §732-206 (emphasis added). "[D]istrict attorneys in this Commonwealth have the power-and the duty-to represent the Commonwealth's interests in the enforcement of its *criminal laws*." *Bauer*, 261 A.2d at 575. "[T]he [d]istrict [a]ttorney is statutorily and constitutionally responsible for law enforcement at the local level . . . ." *Schab*, 383 A.2d at 824. Thus, in criminal matters, the district attorneys are the primary authority for criminal prosecution.

As discussed above, the General Assembly carved out very specific exceptions where the Attorney General may criminally prosecute despite the broad delegation of authority to the district attorneys. 71 P.S. §732-205. Only in those limited circumstances, as prescribed by statute, may the Attorney General interfere with the district attorney's principal authority in criminal matters. *Schab*, 383 A.2d at 824. This limitation on the Attorney General's ability to usurp the authority of the district attorneys necessitated the supersession provisions. *Id.* "[T]he Attorney

---

[9] Act of August 9, 1955, P.L. 423, *as amended*, 16 P.S. §1402.

16

General must establish good cause for the supersession" because the Attorney General is encroaching upon the district attorney's statutory authority. *Id.*

Such is not the case with civil matters. The General Assembly mandated that the Attorney General "shall represent" the Commonwealth in "any" civil action brought by the Commonwealth without limitation. 71 P.S. §732-204(c); *Synthes USA HQ*, 289 A.3d at 859-60. UTPCPL enforcement actions are civil in nature. *Gabriel v. O'Hara*, 534 A.2d 488, 495 (Pa. Super. 1987). Although the General Assembly delegated some authority to district attorneys to bring UTPCPL claims in the name of the Commonwealth, it never limited the Attorney General's authority over UTPCPL matters or civil actions in general. Unlike with criminal prosecutions, a supersession provision was not necessary in order for the Attorney General to act on behalf of the Commonwealth to proceed in civil actions because the Attorney General's authority to pursue such claims was not altered.

Notably, at the time the General Assembly enacted (1968) and reenacted (1976) the UTPCPL, it was well established that the Attorney General possessed common law powers to replace or supersede a district attorney. *See Commonwealth v. Fudeman*, 152 A.2d 428, 430 (Pa. 1959); *Matson v. Margiotti*, 88 A.2d 892, 898 (Pa. 1952); *Appeal of Margiotti*, 75 A.2d 465, 466 (Pa. 1950); *In Re Investigation by Dauphin County Grand Jury*, 2 A.2d 783, 789 (Pa. 1939); *Commonwealth ex rel. Minerd v. Margiotti*, 188 A. 524, 531 (Pa. 1936).[10] "[W]here

---

[10] However, in *Commonwealth v. Schab*, 383 A.2d 819, 821 (Pa. 1978), the Supreme Court rejected that holding explaining the line of reasoning was erroneous and not controlling. The *Schab* Court explained that the underlying premise for common law authority was based on the powers of the King's Attorney in England, the precursor to the modern office of the Attorney General. *Id.* The Court continued:

**(Footnote continued on next page…)**

a common[ ]law principle is well established," the courts may presume that the legislative body "has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." *Astoria Federal Savings & Loan Associaton v. Solimino*, 501 U.S. 104, 108 (1991) (internal quotation marks and citation omitted). Under the SCA, "an implication alone cannot be interpreted

> The King's attorney, appointed by the Crown, was the chief law enforcement officer in England. He managed all of the Crown's legal affairs, including the prosecution of all suits, both criminal and civil, in which the Crown was interested. The King's Attorney also had the right to appoint deputies, over which he had complete control and could replace at any time. The question as to the common law power of an Attorney General to supersede a District Attorney on his own motion never arose at common law for the simple reason that elected prosecuting officers were unknown to England's political institutions.
>
> No analogy can rightly be drawn between that system, one of deputized attorneys general, and the system which has existed in Pennsylvania since the office of elective District Attorney was created by [Section 431 of] the Act of May 3, 1850, P.L. 654, [formerly] 16 P.S. §3431[, repealed by the Act of November 22, 2011, P.L. 431] (now 16 P.S. §7701). The elected District Attorney was to perform the function of local prosecutor previously performed by the Deputy Attorney General.
>
> \* \* \* \*
>
> Simply because the Attorney General had the common law power to replace his own deputies does not justify the conclusion that he now has the right to supersede an elected District Attorney, an officer unknown to the common law. It would be incongruous to place the district attorney in the position of being responsible to the electorate for the performance of his duties while actual control over his performance was, in effect, in the Attorney General. To countenance such a separation of accountability and control undermines self-government and promotes centralization.

*Id*. at 822.

18

as abrogating existing law. The legislature must affirmatively repeal existing law or specifically preempt accepted common law for prior law to be disregarded." *In re Rodriguez*, 900 A.2d 341, 344 (Pa. 2003) (internal citation and quotation omitted). The plain language of the UPTCPL did not abrogate this well-established common law rule that existed. Although the common law has since changed, the changes in the Pennsylvania Constitution and the adoption of the CAA after the UTPCPL did not impinge the Attorney General's foremost authority over civil litigation.[11]

Furthermore, as a matter of public policy, any uncertainty or inconsistency about the Commonwealth's position in separate litigations must result in deference to the Attorney General. The Attorney General is elected statewide and is accountable to the broader electorate. The Attorney General represents the public interests of the entire Commonwealth, including its municipalities and subdivisions. The Attorney General is the chief law officer.

Conversely, district attorneys are accountable to the voters of their districts, not the statewide electorate. Although district attorneys may file suit in the name of the Commonwealth, their enforcement powers extend only to such matters

---

[11] Likewise, with respect to the Attorney General's common law *parens patriae* powers, the Pennsylvania Superior Court has recognized:

> Under [Section 7710(d) of the Uniform Trust Act], "[t]he Office of Attorney General has the rights of a charitable organization expressly named in the trust instrument to receive distributions from a trust having its situs in this Commonwealth and the right to notice of any proceeding or nonjudicial settlement agreement in which there is a charitable interest or purpose." 20 Pa. C.S. §7710(d). The Attorney General must be made a party in all proceedings involving charitable trusts. *See In re Pruner's Estate*, [136 A.2d 107, 110 (Pa. 1957)] (discussing predecessor to present statute).

*In re Jackson*, 174 A.3d 14, 21 n.4 (Pa. Super. 2017).

19

"*which arise in the county for which the district attorney is elected*." 16 P.S. §1402(a). That jurisdictional limitation is reflected in the DAs' UTPCPL complaints. The DAs alleged that their actions, and those of other district attorneys, were "limited to their respective jurisdictions," as opposed to the Commonwealth at large, and sought relief specific to their municipalities. *See* PFR ¶34; *see id*., Exhibits C & D. The DAs alleged how the opioid manufacturers and distributors harmed their respective municipalities and sought specific relief to aid their municipalities, but not the entire Commonwealth. *See* PFR, ¶7 and Exhibits C & D.

Because the district attorneys of coordinate jurisdictions are of equal rank, no single district attorney would have the legal or lawful authority to supersede another district attorney in litigation or to settle another district attorney's claims under the UTPCPL. A district attorney in pursuit of his/her UTPCPL claim could adopt a contrary position that is not shared by other district attorneys or the Attorney General, which is not in the best interest of the Commonwealth. *See Commonwealth v. Wardlaw*, 249 A.3d 937, 955 (Pa. 2021) (Dougherty, J., concurring) (expressing concern for potential harm in the criminal context when a single district attorney, answerable only to his/her county constituents, may "adopt a position that is not shared by other district attorneys or the Attorney General"). The Attorney General, as the "chief law officer," outranks all district attorneys and is in the best position to represent the "public interest" in pursuing and resolving the Commonwealth's UTPCPL claims against Settling Defendants particularly where, as here, a conflict in representation exists.

Finally, we note that even if the DAs' UTPCPL actions were permitted to proceed, there is nothing left for them to obtain. The Settlement Agreements have achieved all remedies available for a public UTPCPL claim, including injunctive

20

relief, restitution for victims, and civil penalties. The authorized representatives of the City of Philadelphia and Allegheny County have agreed to the terms of the settlements.[12]

## IV. Conclusion

Upon review, when the UTPCPL is examined within its context and history, as well as in conjunction with other constitutional and statutory provisions governing the authority of the Attorney General and district attorneys, the Attorney General has the authority to supersede the DAs' UTPCPL claims. The Attorney General, as the statewide elected official, has the duty to serve the interests of the public at large, whereas the district attorney serves the interests of his/her local

---

[12] Notwithstanding, we conclude that the parties' dispute is not moot. The doctrine of mootness requires that an actual case or controversy be in existence "at all stages of review, not merely at the time the complaint is filed." *In re Gross*, 382 A.2d 116, 119 (Pa. 1978). "[A] legal question can become moot on appeal as a result of an intervening change in the facts of the case." *Id*. at 119. There are limited exceptions to the mootness doctrine, namely, when (1) the conduct complained of is capable of repetition yet evading review, or (2) involves questions important to the public interest, or (3) will cause one party to suffer some detriment without the Court's decision." *Driscoll v. Zoning Board of Adjustment of City of Philadelphia*, 201 A.3d 265, 269 (Pa. Cmwlth. 2018) (internal citation and quotation omitted). The issue here is not only one of great public importance, but it is capable of repetition yet likely to evade review. This Court previously sustained preliminary objections and dismissed the DAs' similar claims against the Attorney General and Settling Defendants on the basis that the matter was not ripe because the Settlement Agreements and Consent Judgments were contemplated but not yet executed. *See Commonwealth by and through The Philadelphia District Attorney v. The Attorney General of the Commonwealth* (Pa. Cmwlth., Nos. 233, 250, 260, and 261 M.D. 2021, filed February 4, 2022). We opined: "[T]he DAs' claims involve[] uncertain and contingent events that may not occur as anticipated or at all, and any relief that this Court may grant is bound up in the facts as they relate to the terms of the Settlement Agreement and Release that have yet to be finalized or executed." *Id.*, slip op. at 11 (internal quotations omitted). To conclude that those now ripe claims are moot would place the DAs in an untenable catch-22 position of never having this issue resolved. Additionally, we note that the Settlement Agreements directed final resolution of the issue in state court. PFR, Exhibit A, Distributor Settlement Agreement at 36, ¶VI(F)(1)(b)(iv); *Id*., Exhibit B, Janssen Settlement Agreement at 44, ¶XII(F)(2)(d).

21

constituents.  Although those interests may often align, where, as here, a conflict in representation arises, the Attorney General has authority to control the litigation as the "chief law officer."  That control permits the Attorney General to settle such claims when he determines it is in the best interest of the Commonwealth to do so. *See* 7 Am. Jur. 2d Attorney General §29 (2d ed. 2023).  The concurrent authority of the district attorneys to bring UTPCPL actions cannot be interpreted in such a way that undermines the Attorney General's authority to resolve such matters on behalf of the Commonwealth for the common benefit.  To conclude otherwise would subvert the office of Attorney General to a position inferior to that of the district attorneys, which runs afoul of both the Pennsylvania Constitution and the CAA.

Accordingly, we grant judgment in favor of the Attorney General and against the DAs and declare that the Settlements and Consent Judgments fully release all of the Commonwealth's UTPCPL claims against the Settling Defendants, including those filed by the DAs.  In light of this disposition, we dismiss the Settling Defendants' ASR as moot.

_____
MICHAEL H. WOJCIK, Judge

Judge McCullough did not participate in the decision of this case.
Judge Covey did not participate in the decision of this case.
Judge Fizzano Cannon did not participate in the decision of this case.

22

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| The Commonwealth of Pennsylvania, by and through the Philadelphia District Attorney, Larry Krasner, and The Commonwealth of Pennsylvania, by and through the Allegheny County District Attorney, Stephen A. Zappala, Jr., | : : : : : : : |
| Petitioners | : : |
| v. | : No. 283 M.D. 2022 : |
| The Attorney General of the Commonwealth of Pennsylvania, McKesson Corp., Cardinal Health, Inc., AmerisourceBergen Drug Corp., Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc., | : : : : : : : : : |
| Respondents | : |

# **O R D E R**

AND NOW, this 26th day of January, 2024, the Application for Summary Relief (ASR) filed by Respondent Attorney General of the Commonwealth of Pennsylvania is GRANTED; the ASR filed by Petitioners is DENIED; and the ASR filed by remaining Respondents is DISMISSED as moot in accordance with the foregoing opinion.

_____
MICHAEL H. WOJCIK, Judge